_____

JEREMY B.,

                Plaintiff,

v.                                                1:18-CV-1245 (ATB)

COMM'R OF SOC. SEC.,

                Defendant.

_____

APPEARANCES:                                  OF COUNSEL:

LAW OFFICES OF RALPH M. KIRK          RALPH M. KIRK, ESQ.
  Counsel for Plaintiff
10 Westbrook Lane
P.O. Box 4466
Kingston, NY 12402

U.S. SOCIAL SECURITY ADMIN.            DANIEL STICE TARABELLI,
OFFICE OF GEN. COUNSEL                  ESQ.
  Counsel for Defendant
15 Sudbury Street, Ste 625
Boston, MA 02203

ANDREW T. BAXTER, United States Magistrate Judge

## **DECISION and ORDER**

       Currently before the Court, is this Social Security action filed by Jeremy B. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g). This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties.

(Dkt. Nos. 4, 7.) The parties have each filed briefs (Dkt. Nos. 9 and 13) addressing the administrative record of the proceedings before the Commissioner. (Dkt. No. 8.)[1]

I.     **RELEVANT BACKGROUND**

    A.     **Factual Background**

Plaintiff was born in 1978, making him 35 years old on the amended alleged onset date and 39 years old on the date of the ALJ's decision. Plaintiff reported completing the twelfth grade and some vocational training. Plaintiff had past work as a heavy equipment operator, irrigation system installer, landscape laborer, and construction worker (as classified by the vocational expert). At the initial level, Plaintiff alleged disability due to chronic back and neck pain, a herniated disc in the lumbar spine, degenerative disc disease in the neck with previous discectomy, chronic left leg pain with rods and pins placed in the lower left leg, a significantly shorter left leg, right knee pain with previous arthroscopic surgery, and chronic hip pain. He has had multiple surgeries on his back, knee, and leg.

    B.     **Procedural History**

Plaintiff applied for disability insurance benefits on April 13, 2015, alleging disability beginning December 14, 2012. (T. 66, 157-58.) Plaintiff subsequently amended his alleged onset date to September 13, 2013. (T. 37-38.) His application was initially denied on September 1, 2015, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at a hearing before ALJ Robert Gonzalez on October 31, 2017, at which a vocational expert also testified. (T. 33-65.) On December 26, 2017, the ALJ issued a written

---

[1] The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

decision finding that Plaintiff was not disabled under the Social Security Act. (T. 12-32.) On October 3, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-6.)

**C.    The ALJ's Decision**

In his decision (T. 12-32), the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017. (T. 17.) The ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 13, 2013, the amended alleged onset date. (*Id*.) The ALJ further found that Plaintiff had severe impairments including lumbosacral degenerative disc disease, lumbar spine decompression, lumbar spondylosis, status post cervical spine fusion, obesity, right knee arthroscopy, right meniscus tear, and hip degenerative joint disease. (*Id*.) The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (T. 18.) Specifically, the ALJ considered Listings 1.02 (major dysfunction of a joint) and 1.04 (disorders of the spine). (*Id*.)

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work except he is "limited to occasional stooping, crouching; occasional climbing and descending stairs; must use a cane to ambulate, no climbing ladders, ropes or scaffolds, and no working at unprotected heights, no kneeling[,] crawling; and can sit/[]stand at will while still on task." (*Id*.) The ALJ determined, based on vocational expert testimony, that Plaintiff was unable to perform any past relevant work, but could perform jobs existing in significant numbers in the national economy. (T. 26-28.) The ALJ therefore concluded that Plaintiff was not disabled. (T. 28.)

### D. Issues in Contention

In his brief, Plaintiff argues that the ALJ's RFC finding that he can perform the sitting demands of sedentary work, is not based on substantial evidence. (Dkt. No. 9, at 14-16.) Plaintiff also contends that the ALJ ignored the treating physician rule in weighing the opinion of Prem P. Gupta, M.D., made improper medical judgments, and erred in evaluating Plaintiff's symptoms. (*Id*. at 15-24.) Defendant maintains that the ALJ adequately accounted for Plaintiff's difficulty sitting in the RFC, properly weighed Dr. Gupta's opinion, and properly evaluated Plaintiff's subjective symptoms. (Dkt. No. 13, at 3-13.)

The Court concludes that the ALJ did not properly evaluate the medical opinion evidence, and that his RFC determination, particularly with respect to plaintiff's capacity for sitting, was not supported by substantial evidence. Accordingly, the Court orders a remand of this case for further administrative review.

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See, e.g., Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian*, 708 F.3d at 417 (*citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971)). Where evidence is deemed susceptible to more than one

rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work

5

> experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III.   ANALYSIS

### A.   The ALJ's RFC Determination with Respect to Plaintiff's Capacity for Sitting, was not Supported by Substantial Evidence

#### 1. Applicable Law

##### a. Treating Physician

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 404.1527(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, " . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

6

In deciding how much weight to afford the opinion of a treating physician, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at 375 (quoting *Selian*, 708 F.3d at 418). However, where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" of 20 C.F.R. § 404.1527(c) is required. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran,* 362 F.3d at 31-32). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6).

### b. RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, 11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting Social Security Ruling ("SSR") SSR 96-8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. § 404.1545. *See Martone v.*

7

*Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta*, 737 F. Supp. at 183; *Sullivan v. Sec'y of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, 09-CV-1120 (DNH/GHL), 2010 WL 3825629, *6 (N.D.N.Y. Aug. 17, 2010) (citing SSR 96-8p, 1996 WL 374184, at *7).

### c. Review of Medical Evidence

"An ALJ should consider 'all medical opinions received regarding the claimant.'" *Reider v. Colvin*, 15-CV-6517P, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting *Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)). "The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek*, 802 F.3d at 375 (citing *Burgess*, 537 F.3d at 131). In assessing a plaintiff's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because such consultants are qualified experts in the field of social security disability. *See Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Miller v. Comm'r of Soc. Sec.*, 1:13-CV-1388 GLS, 2015 WL 1383816, at *8 (N.D.N.Y. Mar. 25, 2015) (both consultative examiner and non-examining physician were recognized experts in evaluation of medical issues in disability claims; [a]ccordingly, their

8

opinions can be given weight, even greater weight than opinions of treating physicians, when, as here, they are supported by substantial evidence); *Little v. Colvin*, 5:14-CV-63 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015).

### 2. Medical Opinions

In August 2013, orthopedist Paul G. Jones, M.D., completed an independent medical examination of Plaintiff, noting lumbar syndrome with need for further treatment and a partial marked level of disability. Dr. Jones opined that Plaintiff could only do sedentary work full-time if he was able to get up and move around every hour to prevent stiffness in his back. (T. 542-44.) In October 2014, Dr. Jones again completed an independent medical examination and found that Plaintiff had a marked disability, could only do sedentary work, needed to change positions as needed because of his lower back, had weakness in his left leg, and must be permitted to work with the use of a cane. (T. 424.) The ALJ afforded Dr. Jones' opinions some weight, stating that they supported the sit/stand at will limitations and "provide[d] probative evidence to support the claimant's residual functional capacity." (T. 23.) The ALJ noted that, although the August 2013 opinion "was given prior to alleged onset, it was sufficiently close in time to consider in determining the claimant's overall functioning and was consistent with the various post onset evaluations of the claimant's doctors[.]" (T. 22-23.)

On September 13, 2013, treating physician Christopher Inzerillo, M.D., completed disability assessments. (T. 430-36.) He stated that Plaintiff was out of work, with total disability, due to right knee lateral meniscal tear status post arthroscopy, with an approximate return to work date of September 12, 2013, and an estimated maximum medical improvement of May 7, 2014. (T. 430.) On September 11, 2013, Dr. Inzerillo noted that Plaintiff could not work because he was using an assistive device to walk. (T. 560.) The ALJ afforded little weight to

9

these assessments because they were vague and "not working due to using a cane is a vocational issue outside the scope of [Dr. Inzerillo's] expertise, and the opinion was rendered prior to onset." (T. 19-20.) The ALJ also observed that Dr. Inzerillo did not provide a function-by-function assessment of Plaintiff's work abilities and that his opinions were outside the period of alleged onset. (T. 20.)

In December 2013, Steven C. Weinstein, M.D. diagnosed Plaintiff with, inter alia, degeneration of lumbar or lumbosacral discs. Dr. Weinstein opined that surgical intervention was not indicated at that time and recommended a change in Plaintiff's opioid medication and treatment with facet joint injections or medial branch blocks. (T. 567.) Dr. Weinstein stated: "[Plaintiff] is totally disabled." (*Id.*) The ALJ afforded little weight to this statement because it was a vague assessment and did not provide a specific function-by-function assessment of basic work activity abilities. (T. 20.)

Between April 2014 and February 2015, treating orthopedic provider Jean A. Bachar, M.D., opined that Plaintiff was totally disabled and 100 percent impaired. (T. 451-56, 465-67, 470-82.) The ALJ afforded very little weight to these assessments, finding that they were vague, lacking a function-by-function assessment of basic work activity, and not generally supported by Dr. Bachar's own physical examinations. (T. 21-22.)

In July 2014, treating provider Jeffrey A. Goldstein, M.D., noted that Plaintiff was having significant difficulties and had done poorly with non-operative treatment. (T. 570.) Dr. Goldstein requested authorization for anterior and posterior lumbar spinal decompression and fusion at L5-S1 and found that Plaintiff was disabled for his job and would likely have difficulty returning to his previous employment. (*Id.*) The ALJ afforded great weight to Dr. Goldstein's opinion that Plaintiff "would have difficulty returning to his past work as that portion of the

10

opinion is very well supported by various opinions and physical examinations. However, Dr. Goldstein does not provide an opinion as to the claimant's ability to perform other work so his assessment is limited in that regard." (T. 23.)

In November 2015, Arnold Goran, M.D., completed an independent neurological examination and noted that Plaintiff had some slight improvement in his low back pain following his April 2015 lumbar decompression. (T. 590.) Dr. Goran found that there was no evidence that Plaintiff was responding to current treatment with an objective functional gain, making further treatment unnecessary. He opined that Plaintiff could not return to work, with or without restrictions, and had a permanent marked degree of disability. (T. 597-99.) The ALJ afforded only slight weight to this opinion because it was a vague assessment, relied on Workers Compensation standards, was poorly supported by the examination results throughout the record of generally stable neurological findings, did not provide a specific function-by-function assessment of basic work activity abilities, and failed to address or opine any limitations. (T. 24.) The ALJ noted that Dr. Goran "actually recommended a functional capacity evaluation . . . ." (T. 24, 598.)

Between November 2014 and February 2016, Plaintiff treated with neurologist Jeffrey Oppenheim, M.D. (T. 23-24, 485-512.) In his decision, the ALJ noted Dr. Oppenheim's observations that Plaintiff was doing well and was neurologically intact, and that Plaintiff should avoid excessive exertional activity including repetitive bending and twisting, with difficult housework performed reluctantly and carefully. The ALJ afforded Dr. Oppenheim's opinion and limitations some weight "since he is an expert in his field and his assessment is generally well supported by the mostly stable and benign examination findings. The residual functional

11

capacity does take into consideration the opinion by reducing his work ability to sedentary work and also providing limitations for stooping." (T. 23-24.)

Between July 2015 and January 2017, Plaintiff treated with Vladimir Andries, M.D., who opined, on January 27, 2017, that Plaintiff was not able to work. (T. 513-28.) The ALJ afforded little weight to this statement because it was vague, did not provide a function-by-function assessment of basic work activity, and was not consistent with other treating source examinations and examining opinions. (T. 24.)

In August 2017, treating physician Dr. Prem Gupta completed a medical source statement, noting that Plaintiff was first seen on February 3, 2017, and was seen monthly thereafter. (T. 538.) Dr. Gupta's diagnoses included chronic low back pain, chronic neck pain, status post low back and neck surgery, and chronic pain in the legs with symptoms including frequent cramps. (*Id.*) Dr. Gupta stated that Plaintiff was taking MS Contin and Oxycodone, with fair pain control. He opined that Plaintiff could walk one block without rest or severe pain, sit for 30 minutes at a time and stand for 15 minutes at a time, sit for a total of up to two hours and stand/walk for a total of less than two hours during an eight-hour workday. (T. 538-39.) Dr. Gupta found that Plaintiff needed a job permitting shifting positions at will, periods of walking around four times per day for five minutes each time, and an unscheduled 30-minute break every day. (T. 539.) Dr. Gupta stated that Plaintiff must use a cane for imbalance and pain and opined that he could rarely lift and carry up to 20 pounds; occasionally lift and carry less than 10 pounds; occasionally twist; rarely stoop, crouch/squat and climb stairs; and never climb ladders. (T. 540.) Plaintiff was capable of only low stress work, would be off task more than 25 percent of the workday, and would be absent more than four days per month. (T. 541.) The ALJ afforded Dr. Gupta's opinions very little weight because they were poorly supported by the many

12

examinations from different doctors, including Dr. Gupta's own reports finding Plaintiff was neurologically intact, as well as "the various stable neurological findings by the independent medical examiners." (T. 24-25.)

### 3. Analysis

The ALJ determined that Plaintiff had the RFC to perform a modified range of sedentary work with a sit/stand option. (T. 18.) The full range of sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. § 404.1567(a); SSR 96-9p, 1996 WL 374185, at *3. Jobs are sedentary if walking and standing are required occasionally, and other sedentary criteria are met. "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about two hours of an eight-hour workday. Generally, sitting for a total of about six hours during an eight-hour workday is required. SSR 96-9p, 1996 WL 374185, at *3.

Plaintiff argues that the ALJ's RFC determination that Plaintiff could perform the sitting requirements of sedentary work was not supported by substantial evidence. (Dkt. No. 9, at 14-16; T. 539.) Plaintiff maintains that sitting limitations more restrictive than those found by the ALJ were well-documented, and were supported by the opinions of Dr. Gupta, Workers Compensation independent medical examiners, and other treating providers. (*Id*.) Plaintiff contends that the ALJ ignored the treating physician rule and failed to articulate adequate reasons for rejecting Dr. Gupta's treating source opinion. (*Id*. at 16.) The Court finds these arguments persuasive for the following reasons.

In finding that Plaintiff could perform the sitting requirements of sedentary work with a sit/stand option, the ALJ dismissed the specific findings of treating physician, Dr. Gupta, in August 2017, that Plaintiff could only sit or stand/walk for a total of two hours or less each

during an eight-hour workday, even when permitted to shift positions at will. The ALJ also rejected numerous other specific limitations assessed by Dr. Gupta, including that Plaintiff would be off task more than 25% of the workday or more, and would miss more than four days per month due to impairments or treatment.[2]

The only other physician who opined that Plaintiff could perform full-time sedentary work, with the ability to change positions as needed, was Dr. Jones. He did not treat Plaintiff, but examined him twice, in August 2013--just prior to the amended onset date--and in October 2014--before Plaintiff underwent largely unsuccessful lumbar decompression surgery in April 2015. Dr. Jones did not make specific function-by-function findings, including with respect to Plaintiff's ability to sit during the workday, to stay on task, or to avoid excessive absences. However, the ALJ generally rejected the opinions of several doctors who examined or treated Plaintiff after Dr. Jones's examinations and found that Plaintiff was fully disabled. The ALJ emphasized that these opinions were vague and that the doctors did not provide a function-by-function assessment of Plaintiff's limitations. (T. 19-25.)

The ALJ failed to properly weigh the limited opinion evidence with respect to whether the Plaintiff could actually meet the sitting requirements of sedentary work even with a sit/stand option, or meet the attendance and other requirements of competitive, full-time work. Rather, the ALJ selectively relied on the underlying medical evidence to support his conclusions and substituted his lay analysis of general neurological findings in a manner inconsistent with the conclusion of treating and examining doctors who considered the same neurological findings. (Dkt. No. 9, at 18-19; T. 19-24.)

---

[2] The VE testified that an employee who was off task 25% or more of the workday or absent an average of four or more days per month "would not be able to maintain employment." (T. 63-64.)

14

The Court acknowledges that Dr. Oppenheim stated, in March 2015, that Plaintiff's neurosurgical examination was "intact," but Dr. Oppenheim still recommended neurosurgical intervention, and a lumbar fusion at L5-S1 was performed the next month. (T. 488-90, 493-500.) Following that surgery, Dr. Goran examined Plaintiff in November 2015 and noted that Plaintiff had some slight improvement in his low back. (T. 590.) However, Plaintiff reported that he had to stop twice during the 45-minute trip to the examination because of back pain. (T. 591.) On neurological examination, Dr. Goran noted that Plaintiff was in obvious distress with back pain and had difficulty sitting. (T. 596.) He had considerable difficulty getting on and off the exam table and lying in the supine position, and had a markedly antalgic gate. (*Id*.) Dr. Goran also concluded that the objective findings were consistent with and proportional to Plaintiff's subjective complaints. (T. 597.)

Most of the examining and treating opinions of record indicated that Plaintiff was totally disabled.[3] Dr. Jones opined, before Plaintiff had spinal surgery, that he could only perform sedentary work if he was allowed to change positions; but Dr. Jones failed to specify the number of hours Plaintiff could sit in a workday. (T. 430-36, 424, 451-56, 465-67, 470-82, 513-28, 538-44, 560, 567, 597-99.) Dr. Gupta opined that Plaintiff could sit only for up to two hours total, that he must walk four times a day for five minutes, and that he needed to take an unscheduled break for 30 minutes every day. (T. 539.) While the ALJ was correct in his assessment that much of the opinion evidence of record failed to offer a function-by-function analysis, he then rejected Dr. Gupta's opinion, the only opinion of record which did offer a function-by-function analysis. (T. 25.) The ALJ relied on his lay analysis of the underlying medical evidence as

---

[3] Dr. Goldstein opined Plaintiff was disabled for his job and would likely have difficulty returning to his previous employment. (T. 570.) Dr. Oppenheim indicated Plaintiff should avoid excessive exertional activity including repetitive bending and twisting. (T. 485-512.)

support for his RFC finding regarding the sitting requirements of sedentary work. "While an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted a medical opinion to] or testified before him.'" *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). *See also Flynn v. Comm'r of Soc. Sec.*, 729 F. App'x 119, 121 (2d Cir. July 6, 2018) ("[W]hile a physician's opinion might contain inconsistencies and be subject to attack, a circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion.") (citing *Shaw v. Chater*, 221 F.3d 126, 135 (2d Cir. 2000)). The ALJ's inability to rely on any other detailed medical opinion to support the RFC finding that Plaintiff can meet the sitting demands of sedentary work with a sit/stand option underscores the lack of support in the record for this portion of the ALJ's RFC finding.

Defendant contends that the ALJ properly weighed Dr. Gupta's opinion and provided good reasons for rejecting it. (Dkt. No. 13, at 7-9.) The ALJ's stated that he dismissed Dr. Gupta's opinions because they were not supported by many examinations from different doctors, including Dr. Gupta's own findings that Plaintiff was neurologically intact, and because Dr. Gupta's findings were contradicted by the opinions of independent medical examiners who reported various stable neurological findings. (T. 25.) However, Dr. Gupta's treatment notes from 2017 indicate tenderness in Plaintiff's cervical spine and lumbar spine, and painful range of motion in the lumbosacral spine. (T. 530-36.) Moreover, the ALJ appears to unduly focus on generally benign neurological findings, rather than Plaintiff's actual functional capabilities, as indicated by the opinion and other medical evidence. (T. 538-41.) The ALJ rejected the opinions of several treating and examining doctors who concluded that Plaintiff was totally

16

disabled, which undermines the ALJ's observation that Dr. Gupta's findings were not supported by examinations of other doctors.[4]

No medical opinion of record supports the ALJ's RFC finding that Plaintiff can perform the sustained sitting requirements of sedentary work even with a sit/stand option. (T. 18.) In the absence of medical opinion evidence supporting his RFC findings, the ALJ improperly substituted his analysis of the underlying medical evidence for the opinions of the treating and examining sources. The ALJ's error in this regard tainted his RFC determination that Plaintiff can meet the requirements for sedentary work. *See, e.g., Lester v. Comm'r of Soc. Sec.*, 13-CV-531 (FJS/ATB), 2014 WL 4771860, at *9 (N.D.N.Y. Sept. 24, 2014) ("To the extent that the ALJ suggested that the totality of Dr. Fang's medical findings regarding plaintiff undercut her explicit opinion, in two different RFC questionnaires, that plaintiff could only sit for a total of four hours in an eight-hour workday . . . , the ALJ improperly substituted his opinion for that of a medical expert."); *DiVetro v. Commissioner of Social Sec.*, 05-CV-830 (GLS/DEP), 2008 WL 3930032, at *12-13 (N.D.N.Y. Aug. 21, 2008) (the record lacks any assessment from either a treating source or a consultant supporting a finding of plaintiff could sit for eight hours in a given workday; this portion of the ALJ's RFC determination was not well-supported).

### B. The ALJ's Errors Require Remand

The ALJ's error in his analysis of the medical and opinion evidence regarding Plaintiff's ability to sit tainted his overall RFC analysis, his evaluation of Plaintiff's symptoms, and his ultimate determination with respect to disability. Accordingly, a remand in required. *See, e.g., Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980) ("When there are gaps in the administrative

---

[4] The court acknowledges that an ultimate opinion that a claimant is "disabled" is an administrative finding reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(d) and 416.927(d); SSR 96-5p, 1996 WL 374183, at *2.

record or the ALJ has applied an improper legal standard . . . remand to the Secretary for further development of the evidence" is generally appropriate.) On remand, the ALJ should conduct a new analysis pertaining to Plaintiff's RFC and symptoms.

It is possible, particularly with further development of the record on remand, that the ALJ could make a proper RFC determination as to Plaintiff that would not be incompatible with him performing some sedentary jobs that exist in significant numbers in the national economy. Thus, this Court cannot conclude that "substantial evidence on the record as a whole indicates that the [plaintiff] is disabled." and I cannot recommend a remand solely for the determination of benefits. *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996).

**WHEREFORE**, based on the findings in the above Report, it is hereby

**ORDERED**, that the decision of the Commissioner be **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper determination of Plaintiff's residual functional capacity and other further proceedings, consistent with this Report.

**ORDERED**, that the Clerk enter judgment for the **PLAINTIFF**.

Dated: February 25, 2020

Andrew T. Baxter
U.S. Magistrate Judge